IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**JANESHA LEE**     **PLAINTIFF**

**v.**     **CAUSE NO. 3:11-CV-479-CWR-LRA**

**USABLE LIFE; PLUMPOINT**     **DEFENDANTS**
**CHRISTIAN LIVING CENTER INC.,**
**d/b/a Compere's Nursing Home**

## ORDER

Before the Court are motions for summary judgment filed by each of the defendants. Docket Nos. 41, 43. The plaintiff has responded, the defendants have replied, and the matter is ready for review. The motions will be granted.

### I. Factual and Procedural History

The following allegations are drawn from the plaintiff's amended complaint:

In 2009, Jeanette Renea Lee was employed by Compere's Nursing Home in Jackson, Mississippi. Docket No. 1-1, at 8. She maintained a life insurance policy through her employer and paid the insurance premiums through payroll deductions. *Id.*

On October 16, 2009, Lee suffered a stroke, and two months later passed away. *Id.* The life insurance company, USAble Life, subsequently declined to pay the proceeds of the policy. *Id.*

In July 2011, the beneficiary of that policy, plaintiff Janesha Lee, filed this suit in the Circuit Court of Hinds County against the insurance company and Jeanette Lee's former employer. *Id.* at 7. The plaintiff sought compensatory and punitive damages for bad faith denial of insurance benefits, negligence, breach of contract, and detrimental reliance. *Id.* at 9-10.

USAble Life removed the suit to this Court asserting that the claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA). Docket No. 1, at 1. The parties engaged in some discovery, after which the present motions were filed.

### II. Arguments

USAble Life argues that Jeanette Lee's (hereinafter "Lee") insurance coverage ended January 31, 2009, approximately 11 months before her death. Docket No. 42. "Because the decedent, Jannette Lee, was not covered under the Group Policy at the time of her death on December 28,

2009, the Plaintiff's claim was appropriately denied," it contends. *Id.* at 2.

Plumpoint Christian Living Center, d/b/a Compere's Nursing Home (hereinafter "Plumpoint"), agrees that there was no coverage at the time of Lee's death. Docket No. 44, at 3. It also argues that although it incorrectly withheld Lee's insurance premiums for a period of time, it later remedied that error. *Id.* Plumpoint says it is not liable for claims that run against the insurance company and that the remaining claims against it fail for a lack of evidence. *Id.* at 3-7.

In response, the plaintiff claims that the plain language of the insurance policy required USAble Life to maintain Lee's coverage for three months following her separation from Plumpoint. Docket No. 49, at 6. She also asserts that the form in the administrative record showing that Lee cancelled her insurance coverage is not accurate and did not actually cancel the life insurance policy. *Id.* Finally, the plaintiff claims that less deference should be afforded the administrator's decision because there is a conflict of interest. *Id.* at 7.

USAble Life's rebuttal denies that any conflict of interest matters here and denies that the policy required Lee's coverage to be extended for three months. Docket No. 51, at 5-6.

### III.    Standard of Review

The parties agree that the insurance policy in question constituted an employee welfare benefit plan governed by ERISA. Docket No. 49, at 5. The ERISA standard of review will therefore be applied.

"The summary judgment standard for ERISA claims is unique because the Court acts in an appellate capacity reviewing the decisions of the administrator of the plan." *Riley v. Blue Cross & Blue Shield of Mississippi*, No. 3:09-cv-674, 2011 WL 2946716, *1 (S.D. Miss. July 21, 2011).

"Eligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language." *Threadgill v. Prudential Securities Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998) (citation omitted). Because the plan granted USAble Life "discretionary authority to determine eligibility for benefits under the plan or to interpret the plan's provisions," the Court reviews USAble Life's decision for abuse of discretion. *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004) (citation omitted).

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quotation marks and citation omitted). "If the plan

fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Id.* (citing *Ellis*, 394 F.3d at 273). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 273 (quotation marks and citation omitted). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (quotation marks and citation omitted).

Restated, the question is whether USAble Life's decision was supported by substantial evidence, "*not* [whether] substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim." *Ellis*, 394 F.3d at 273 (citation omitted). "We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance." *Id.*

Judicial "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end." *Holland*, 576 F.3d at 247 (quotation marks and citation omitted).[1]

## IV. Discussion

The Court will consider each defendant in turn.

### A. USAble Life

The available evidence shows that Lee was employed at Plumpoint twice, first from November 7, 2005, to January 16, 2009, and then from February 18, 2009, to October 14, 2009. Docket No. 41-10, at 2 ("Plumlee Decl."). Her life insurance coverage with USAble Life

---

[1] The parties disagree about whether any conflict of interest matters. *E.g.*, *Schexnayder*, 600 F.3d at 470 ("Hartford both administered and paid for the Plan. Thus, a decision to pay benefits affects Hartford's bottom-line, because benefits payments come directly from Hartford."). "The degree to which a court must abrogate its deference to the administrator depends on the extent to which the challenging party has succeeded in substantiating its claims that there is a conflict." *Ellis*, 394 F.3d at 270 (citation omitted). "The mere fact that a plan administrator is both the claims administrator and the plan funder does not necessarily tip a close case in a plan member's favor." *Leipzig v. Principal Life Ins. Co.*, 707 F. Supp. 2d 685, 694 (N.D. Tex. 2010).

Assuming that USAble Life has a conflict of interest here, it is "not a significant factor in this case." *Id.*; *see Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010). As discussed below, the evidence shows that there was no insurance coverage at the time of Lee's death. The parties' dispute is therefore more clear-cut than the common situation where coverage is established, but the plaintiff disagrees with the insurer's professional assessment of the medical records. There was no similar exercise of discretion here.

commenced in April 2007. *Id.* At that time and for nearly two years, Plumpoint appropriately deducted premiums from her paycheck and sent them to USAble Life. *Id.*

On April 16, 2009, Plumpoint notified USAble Life that Lee's employment had ended on January 31, 2009, "and that her insurance coverage was to be cancelled." Docket No. 41-4, at 2 ("Eudaly Decl."). USAble Life then terminated Lee's coverage as of January 31, 2009, and heard nothing more from Plumpoint about Lee.[2] *Id.* Nothing in the record shows that Lee reenrolled in life insurance coverage upon her reemployment. *See id.* at 3.

As a result, when Lee passed away in December 2009, USAble Life's insurance policy was not in effect. For the preceding eight months, the insurer had not covered Lee, did not know she had been rehired, and had not received premiums on Lee's behalf. *Id.* Because substantial evidence shows there was no coverage in place when Lee passed away, USAble Life is entitled to summary judgment.

### B. Plumpoint

That leaves open whether Plumpoint had erroneously led Lee to believe that she maintained life insurance coverage during her second period of employment. The available evidence shows that although such an error existed for several months, it was ultimately harmless because Lee cancelled her policy before her death.

Between February 18, 2009, and October 9, 2009, Plumpoint deducted life insurance premiums from Lee's wages but did not remit those sums to USAble Life. Plumlee Decl. at 3. When the error was discovered, Plumpoint refunded to Lee the premiums it had wrongfully deducted over that period.[3] *Id.*

Notwithstanding that error, the evidence indeed shows that on October 9, 2009, Lee cancelled her life insurance coverage (or, the coverage she thought she had). *Id.* The termination form in the record contains Lee's signature and handwriting that states, "cancel US ABLE STD + Life." Docket No. 41-14. Plumpoint stopped deducting funds from her paycheck at that time. Plumlee Decl. at 3.

---

[2] USAble Life submitted evidence that no notice of cancellation had to be sent to Lee. Eudaly Decl. at 2.

[3] The refund check was dated November 20, 2009, and cashed 10 days later. Docket No. 43-7. Lee endorsed the check and negotiated it to a local merchant. *Id.* Lee knew before her death that she did not have life insurance coverage.

4

The evidence shows that although Plumpoint made a mistake in deducting premiums from Lee's paycheck for eight months, it was Lee's decision to terminate insurance coverage some two and a half months before her death.[4] When she died there was no life insurance coverage in effect.

Finally, the plaintiff has asserted that the termination form in the record is not true and correct. Docket No. 49, at 6. It is appropriate to note that this is the rare ERISA case where the plaintiff took discovery.[5] *See* Docket Nos. 10-11, 13-16, 21-26. The parties also jointly (and successfully) moved this Court to extend the discovery period for an additional month. Docket Nos. 19-20. Since the plaintiff had an opportunity to investigate the termination form, her failure to put forward competent evidence calling it into question renders her theory unavailing.

## V. Conclusion

It is well-established that insurance coverage has to be in place at the time of loss if a beneficiary is to recover the policy proceeds. *E.g.*, *Reigstad v. Pilger*, 316 F. App'x 322, 327 (5th Cir. 2009) ("In this case, there was no existing policy on the Reigstads' property, so there is no argument that an existing policy provided the requisite coverage."). Here, the evidence shows that life insurance coverage did not exist at the time of Lee's death. Accordingly, neither defendant erred in denying the plaintiff's claim for life insurance benefits.

The motions for summary judgment are granted.

**SO ORDERED**, this the 15th day of January, 2013.

                                          s/ Carlton W. Reeves
                                          UNITED STATES DISTRICT JUDGE

---

[4] The plaintiff's argument that the policy was required to continue for an additional three months after separation from Plumpoint is unconvincing in light of Lee's decision to terminate coverage.

[5] *See Crosby v. Louisiana Health Serv. and Indem. Co.*, 647 F.3d 258, 263-64 (5th Cir. 2011) (describing certain limited exceptions where district court is permitted to stray from the ERISA administrative record and authorize limited discovery); *McFadden v. Prudential Ins. Co. of America*, --- F. Supp. 2d ---, 2012 WL 2839634, at *3 (S.D. Miss. 2012) (denying participant's motion for discovery); *Wilson v. Veolia Environmental Serv. North Am. Corp.*, No. 3:11-cv-91, 2012 WL 1067665 (S.D. Miss. March 29, 2012) (denying plaintiff's request for discovery).